IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| KISHA JOANN WELCH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:15CV352 |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Kisha Joann Welch brought this action pursuant to Section 205(g) of the Social Security Act, as amended (42 U.S.C. § 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claim for Disability Insurance Benefits under Title II of the Social Security Act (the "Act"). The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I. PROCEDURAL HISTORY

Plaintiff protectively filed her application for Disability Insurance Benefits on February 10, 2011, alleging a disability onset date of September 15, 2008. (Tr. at 194-200, 213.)[1] Her application was denied initially and upon reconsideration. (Tr. at 126-29, 131-34.) Thereafter, Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 137-38.) On September 13, 2012, and May 23, 2013, Plaintiff attended subsequent hearings, along with her attorney and an impartial vocational expert who appeared by phone in the second

---

[1] Transcript citations refer to the Sealed Administrative Transcript of Record [Doc. #5].

hearing. (Tr. at 14). The ALJ ultimately issued a decision finding that Plaintiff was not disabled under the meaning of the Act (Tr. at 24), and on July 30, 2014, the Appeals Council denied Plaintiff's request for review, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 6-8).

## II.   LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of review of [such an administrative] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal brackets omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

2

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472 (internal brackets omitted). "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that in administrative proceedings, "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2]

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the

---

[2] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

3

Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first two steps, and establishes at step three that the impairment "equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations," then "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual function[al] capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that pursuant to the administrative regulations, the "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

4

"perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the Commissioner to prove that a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since her alleged onset date. She therefore met her burden at step one of the sequential evaluation process. At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments: focal disc protrusion at L5/S1 associated with right lateral recess and right central spinal canal narrowing; degenerative disc disease of the cervical spine; bilateral carpal tunnel syndrome; migraine headaches; chronic pain syndrome; depression; anxiety; and obesity. (Tr. at 16-17.) The ALJ found at step three that these impairments did not meet or equal a disability listing. Thereafter, the ALJ assessed Plaintiff's RFC and found her capable of performing light work with the following additional restrictions:

> [S]he was limited to frequent pushing, pulling, and/or operating hand controls, handling, and/or fingering with the upper extremities; she required a sit/stand

5

option at will; no more than occasional climbing ramps, stairs, ladders, ropes, and/or scaffolds, balancing, stooping, kneeling, crouching, and/or crawling; avoid concentrated exposure to workplace hazards, such as dangerous moving machinery and unprotected heights, as well as concentrated exposure to vibration; she was able to perform simple, routine, repetitive tasks, and maintain attention, concentration, persistence or pace to stay on task for 2 hour periods during a typical 8-hour workday, as required to perform such tasks, in a low stress work setting, which is further defined to mean no production-pace or quota-based work.

(Tr. at 19.) At step four of the analysis, the ALJ found, based on the testimony of a vocational expert, that Plaintiff's past relevant work exceeded her RFC. (Tr. at 23.) However, the ALJ determined at step five that Plaintiff could perform other jobs that exist in significant numbers in the national economy and, therefore, that Plaintiff was not disabled. (Tr. at 23-24.)

Plaintiff now argues that the ALJ erred (1) in his RFC assessment by finding that Plaintiff could frequently operate hand controls, handle, and finger, given her carpal tunnel syndrome, and (2) in his finding that Plaintiff could perform semi-skilled work while failing to identify any specific transferable skills. (Pl.'s Br. [Doc. #9] at 3.)

Taking the latter contention first, the Court notes that at step 4 of the sequential evaluation, the ALJ determined that Plaintiff had past relevant work as a floral designer, a skilled position. (Tr. at 23.) However, as noted above, the ALJ concluded that Plaintiff could not return to her past work as a floral designer, in light of the RFC. The ALJ therefore moved to step 5, noting that Plaintiff was a younger individual with a high school education. The ALJ then concluded that:

> Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills."

6

(Tr. at 23.) The ALJ therefore did not discuss whether Plaintiff had any transferable skills; instead, the ALJ applied Medical-Vocational Rules 202.21 (light work) and 201.28 (sedentary work), applicable to a younger individual who is a high school graduate or more with previous work experience that is "[s]killed or semiskilled—skills not transferable." 20 CFR Part 404, Subpart P, Appendix 2. Because of the additional limitations reflected in the RFC, the ALJ asked the Vocational Expert whether additional jobs existed for an individual with Plaintiff's age, education, work experience, and residual functional capacity. The Vocational Expert identified two potential occupations: telephone answering service operator (sedentary work/semi-skilled/SVP 3), and dispatcher (sedentary work / semi-skilled/ SVP 3). The ALJ further noted that "[a]lthough these jobs cited are semi-skilled jobs, they are consistent with simple, routine, repetitive tasks because they are very low-level semi-skilled jobs." (Tr. at 24.) However, neither the ALJ nor the Vocational Expert addressed the transferability of job skills to support the conclusion that Plaintiff could make the adjustment to these semi-skilled positions. Plaintiff contends that as a result of this failure, the ALJ's determination on this point is not supported by substantial evidence.

When an ALJ identifies skilled or semiskilled positions that a claimant could perform at step 5, the ALJ must address the basis for concluding that the claimant has the requisite skills to transition to the position, either based on transferability of skills from prior work or based on a recent education program. See 20 C.F.R. § 404.1568; 404.1565. Specifically, Social Security Ruling 83-10 provides that "RFC alone never establishes the capability for skilled or semiskilled work. Ability to perform skilled or semiskilled work depends on the presence of acquired skills

7

which may be transferred to such work from past job experience above the unskilled level or the presence of recently completed education which allows for direct entry into skilled or semiskilled work." SSR 83-10, 1983 WL 31251, at *3 (1983); see also Lundy v. Astrue, No. 4:07CV205A, 2008 WL 1868324 (N.D. Tex. Apr. 17, 2008). If the ALJ relies on transferability of skills from past relevant skilled or semi-skilled work, "the adjudicator or ALJ is required to make certain findings of fact and include them in the written decision. Findings should be supported with appropriate documentation." SSR 82-41, 1982 WL 31389, at *7. Thus, "[w]hen a finding is made that a claimant has transferable skills, the acquired work skills must be identified, and specific occupations to which the acquired work skills are transferable must be cited in the State agency's determination or ALJ's decision." (Id.)

In the present case, rather than following these procedures, the ALJ found that "[t]ransferability of job skills is not material to the determination of disability." (Tr. at 23.) The ALJ therefore did not analyze whether Plaintiff had any tranferable job skills from her past relevant work, and instead applied Medical-Vocational Rules 202.21 and 202.22 (the "Grids") for a younger individual with previous skilled or semiskilled work experience whose skills were not transferable. See also 20 C.F.R. 404.1565(a) ("If you cannot use your skills [from past relevant work] in other skilled or semiskilled work, we will consider your work background the same as unskilled. However, even if you have no work experience, we may consider that you are able to do unskilled work because it requires little or no judgment and can be learned in a short period of time.").

8

Because the ALJ found that Plaintiff could not perform the full range of light work, the ALJ did not stop at the Grids, and considered testimony of the Vocational Expert regarding Plaintiff's ability to perform other work in light of her RFC. See SSR 83-10, 1983 WL 31251, at *1; Gory v. Schweiker, 712 F.2d 929, 931 (4th Cir. 1983) ("When a claimant suffers from both exertional and nonexertional limitations, the tables are not conclusive but may only serve as guidelines."). As noted above, the ALJ found, based upon the expert's testimony, that Plaintiff could perform work as a telephone answering service operator (sedentary/semi-skilled work) and as a dispatcher (sedentary/semi-skilled work). (Tr. at 24.) However, in his questioning of the vocational expert, the ALJ failed to ask any questions regarding transferability of skills and subsequently failed to make any findings regarding transferability. (Tr. at 98-108).

Defendant argues that the ALJ's determination is nevertheless supported by substantial evidence. Defendant contends that "the ALJ was entitled to rely on the testimony of the VE that the jobs of telephonic clerical work with an SVP of 3 constituted unskilled work (Tr. 101-02)." (Defendant's Mem. [Doc. #13], at 15.) Defendant also argues that because Plaintiff is a high school graduate, she should "possess sufficient reasoning capacity to perform the minimal mental demands of the representative telephonic clerical jobs identified by the VE." (Id.) Finally, Defendant argues that because Plaintiff worked at a skilled job as a floral designer for a number of years, Plaintiff's argument that the ALJ should have discussed transferable skills is a "red herring" and not prejudicial error.[4] (Id. at 16.)

---

[4] Defendant also argues that because Plaintiff did not question the vocational expert regarding the skill level of these jobs at the hearing, her argument should be rejected. However, Defendant does not point to any authority to support this contention, and generally the concept of issue exhaustion does not apply in social security cases. See Sims v. Apfel, 530 U.S. 103, 112 (2000). Moreover, it is Defendant's burden at step 5 to establish the availability of other positions in the national economy that Plaintiff could perform.

9

The thrust of Defendant's arguments seems to be that the ALJ found the named jobs to be unskilled work requiring no special skills, and, therefore, the failure to discuss transferable skills does not prevent the Court from finding that his decision is supported by substantial evidence. However, Defendant fails to point out any specific finding by the ALJ that the named jobs were unskilled. Rather, in the quoted language above the ALJ found that the jobs were "very low-level semi-skilled jobs." (Tr. at 24). Likewise, the Vocational Expert testified that the restriction to simple, routine, repetitive tasks vocationally "equates to unskilled and some lower level semi-skilled jobs." (Tr. at 102.) Defendant does not contend that the ALJ properly omitted any discussion of transferable skills if the jobs that he found Plaintiff could perform were semi-skilled jobs.[5]

In Johnson v. Colvin, No. 2:14-400-RMG, 2015 WL 3542714 (D.S.C. June 4, 2015), the Court faced a very similar scenario where the plaintiff was a younger individual, with a high school education, who was unable to return to her prior skilled work. The ALJ found, as in the present case, that the transferability of job skills was not material to the determination of

---

[5] Plaintiff also contends that the ALJ could not designate a skill level for a job that is different from the level assigned by the Dictionary of Occupational Titles ("DOT"). Specifically, Plaintiff notes that under Social Security Ruling 00-04P, "[a]lthough there may be a reason for classifying an occupation's skill level differently than in the DOT, the regulatory definitions of skill levels are controlling. For example, VE or VS evidence may not be relied upon to establish that unskilled work involves complex duties that take many months to learn, because that is inconsistent with the regulatory definition of unskilled work." SSR 00-04P, 2000 WL 18998704, at *3 (2000). However, there is no need to decide this issue in this Recommendation because there is no evidence that the ALJ in this case adopted any expert testimony that designated a job's skill level at a level different from the DOT. Instead, as noted above, the ALJ and VE both indicated that a restriction to "simple routine repetitive tasks" was consistent with some lower-level semiskilled jobs. The Court notes that the Parties do not challenge the determination by the ALJ and the VE that a limitation to "simple, routine, repetitive tasks" is consistent with a semiskilled position, and in any event, the limitation to "simple, routine, repetitive tasks" would not necessarily address the "specific vocational preparation" for the positions identified by the VE, which for an SVP of 3 would require over one month of time to learn the techniques, acquire the information, and develop the facility needed to perform the positions. The ALJ did not address, explain, or attempt to reconcile those determinations.

10

disability because the Medical-Vocational Rules supported a finding of 'not disabled' whether or not she had transferable skills. As in the present case, in light of the claimant's additional limitations, the ALJ heard testimony from a Vocational Expert regarding other available positions, and all of the jobs identified that the plaintiff could perform were semi-skilled jobs. The Johnson court noted that "[t]he ALJ did not discuss transferability at the hearing; the ALJ's decision indicates transferability is not material; and there is no evidence in the record of recently completed education." Johnson, at *7. In light of that determination, the Johnson court was "unable to conclude the Commissioner's decision is supported by substantial evidence and therefore recommend[ed] remanding the case." Id. ; see also Lundy v. Astrue, Civ. A. No. 4:07-cv-205-A, 2008 WL 1868324 (N.D. Tex. Apr. 17, 2008); Powell v. Astrue, Civ. A. No. 0:10-686-JMC-PJG, 2011 WL 5104503 (D.S.C. Aug. 26, 2011).

The Johnson court also considered the contention, like the contention raised by Defendant in the present case, that the ALJ need not analyze transferable skills because the plaintiff had completed formal schooling through high school. However, the Johnson court noted that the same argument had been made in Lundy v. Astrue, and it was rejected there because education and work experience are distinct concepts. The Johnson court noted that "[e]ducation level may be an indicator of a person's vocational capacity, but a person's acquired work skills may or may not be commensurate with her formal education." Johnson, at *6 (quoting Lundy); see also Lundy, at *4 ("The administrative regulations and rulings recognize education and work experience as distinct concepts. Under the regulations, a person's education level refers to formal schooling or other training that contributes to the ability to meet vocational

11

requirements, such as reasoning, language, and arithmetic skills. 20 C.F.R. §§ 404.1564, 416.964. Work experience encompasses the skills and abilities acquired through work done in the past, which shows the type of work a claimant may be expected to do."). In the present case, as in Johnson and Lundy, the ALJ did not analyze what skills Plaintiff may have acquired through education, and "[t]he Commissioner's position that they exist in the abstract is not sufficient." Lundy, at *4. Indeed, accepting the Commissioner's position, anyone with a high school degree would be qualified for any skilled or semi-skilled position without further analysis; this is clearly not the rule. Therefore, the fact that Plaintiff is a high school graduate does not substitute for the ALJ's failure to discuss transferability of skills. See Johnson, at *6.

Ultimately, this Court concludes that, just as in Johnson and Lundy, without an analysis of Plaintiff's transferable skills, substantial evidence does not support the ALJ's determination that there were jobs in the national economy that Plaintiff could perform with her limitations. See Lundy ("It is the Commissioner's affirmative burden at Step Five to "link up" the claimant's skills with a proposed job, but the Commissioner failed to do so in Lundy's case. Moreover, when issues of skills and transferability must be decided, the adjudicator is required to make express findings of fact and include them in the written decision. The ALJ did not make any of the necessary findings because he assumed that transferability was not at issue, but logic dictates that a claimant who cannot perform past relevant work must have transferable skills that equip her to perform the new semi-skilled occupations that fall within her residual functional capacity. At the very least, there are inconsistencies that must be resolved because the ALJ referred to a Guideline rule that pertains to a worker with no transferable skills, but then found other work

available for Lundy based on vocational expert testimony that identified three suitable occupations-all of which are semi-skilled." (internal citations omitted)); see also Prudhomme v. Colvin, 605 F. App'x 250, 254 (5th Cir. 2015) (rejecting Commissioner's argument that the ALJ's failure to discuss transferable skills was harmless error where ALJ found plaintiff could perform semi-skilled jobs). Therefore, the Court concludes that this matter must be remanded so that the ALJ can make the requisite determination. In light of this conclusion, the Court need not reach the additional issues raised by Plaintiff at this time.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be REVERSED, and that the matter be REMANDED to the Commissioner under sentence four of 42 U.S.C. § 405(g). The Commissioner should be directed to remand the matter to the ALJ for proceedings consistent with this Recommendation. To this extent, Defendant's Motion for Judgment on the Pleadings [Doc. #12] should be DENIED, and Plaintiff's Motion for Judgment Reversing the Commissioner [Doc. #8] should be GRANTED. However, to the extent that Plaintiff's motion seeks an immediate award of benefits, it should be DENIED.

This, the 26th day of August, 2016.

/s/ Joi Elizabeth Peake
United States Magistrate Judge